CALICCHIO et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 19, 1911.)

No. 263.

CRIMINAL LAW (§ 1169*)—APPEAL AND ERROR—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.

Various assignments of error to the admission of evidence over objection in a criminal case considered, and *held* without substantial merit either on the ground that the rulings were correct, or the error cured by a subsequent direction to the jury to disregard the evidence, or that it was not prejudicial.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3137–3143; Dec. Dig. § 1169.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Southern District of New York.

Giuseppe Calicchio and others were convicted of a criminal offense, and they bring error. Affirmed.

Olcott, Gruber, Bonynge & McManus (W. M. K. Olcott, Terence J. McManus, and Albert Levy, of counsel), for plaintiffs in error.

Henry A. Wise, U. S. Atty., and Felix Frankfurter, Asst. U. S. Atty.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This is a writ of error to a judgment convicting Giuseppe Calicchio, Giuseppe Morello, Ignatzio Lupo, Nicholas Sylvester, Antonio Cecala, Salvatore Cina, Vincenzo Giglio and Giuseppe Palermo of making counterfeits of the $2 silver certificate of the United States and of the United States $5 bill, in violation of section 5414, U. S. Rev. Stat. (U. S. Comp. St. 1901, p. 3662), and of making plates to do so in violation of section 5430 (page 3671), and of keeping possession of the aforesaid counterfeits in violation of section 5431 (page 3671). Cina and Giglio did not join in the writ, and no one appeared for Palermo at the hearing.

The trial occupied four weeks. The case of the government depended upon the testimony of Comito, one of the counterfeiters, who turned informer, and of his mistress, Katrina, corroborated in many particulars by other witnesses and by circumstances. There can be no doubt that there was evidence to sustain the conviction of all the defendants. The plaintiffs in error rely upon various assignments intended to show that the trial on the whole was not a fair one. It is particularly urged that Lupo and Morello could not have been convicted but for the unfair atmosphere that was created by the prosecution. As this charge of unfairness is serious and made sincerely, and the sentences imposed were severe, we shall consider the assignments relied upon seriatim. We may remark preliminarily that, while things were said and done in the long trial which are much to be regretted, they create a more violent impression when brought together on this hearing than they could have made as they occurred separately at the trial from time to time. The record shows on the whole great regard for the defendants' rights, and the charge in particular was full, clear, and unexceptionable.

First. Nicastio, a witness of defendants, examined in support of an alibi for Morello, was asked on cross-examination:

"Q. Ask him if he was arrested in January, 1905, at Bushwick and Johnston avenues, Brooklyn? Mr. Towns: Objected to as incompetent, irrelevant and immaterial. The Court: You may ask him. (Exception.)"

This exception was good, but the question was not answered. Then followed this question:

"Q. Ask him whether he knows whether he was arrested for blackmail or not by Lieut. Vacharris? Mr. Towns: Object to the form of the question. The Court: He may answer if he knows what it was for. (Exception.)"

The particular ground of objection is not intelligible to us. There is no defect in form, and if there be any error, it was apparently

harmless because the witness answered that the judge discovered "it was all lies, and he was honorably discharged."

Second. Terrenora, one of the defendants' witnesses, examined particularly as to defendant Morello, who was his stepbrother, testified that Morello was arrested in April, 1903, and that his own brother Vincent had been arrested and the whole family frequently searched by detectives. In the direct examination of this witness on these subjects, the government gave the following warning:

"Mr. Smith: I want to caution my learned friend that this is opening the door to a line of testimony that I shall go into quite exhaustively."

Upon cross-examination the government proceeded as follows:

"Q. Do you know that your brother Vincent to-day is under indictment for having in his possession counterfeit bills? Mr. Towns: Objected to as incompetent, irrelevant. The Court: Overruled. (Exception.) A. No, sir. * * * Q. Do you know that Giuseppe Morello was arrested on April 13, 1903, as the principal in the murder of Bernedetto Mardonia, who was found cut up in a barrel? Mr. Towns: Object to the form of the question as incompetent, irrelevant and immaterial. The Court: Overruled. (Exception.)"

We do not understand what is meant by the objection to the form. The substance of the question related to the arrest of Morello in April, 1903, which was brought out on direct.

"Q. Do you know that the last two people that were seen with Mardonia were Giuseppe Morello and Ignatz Lupo? A. That I don't know, and that is not true. Mr. Towns: I object. The Court: Overruled. (Exception.) Q. How do you know that is not true? A. Why did they leave them out: why didn't they keep them and give them the electric chair? Q. How do you know they were not the last men to see them? A. I don't know: I know there was about thirty arrested for that case; that I know. Mr. Towns: Objected to as incompetent, irrelevant, and immaterial, and highly prejudicial to the other defendants. The Court: Overruled. (Exception.)"

Thereupon the court said:

"I sustain the objection that it is prejudicial to the other defendants and cannot be used against them at all and must not be. You are not to assume, gentlemen, that it is true at all. I only permit it because Mr. Morello's counsel insisted upon going into this, and having done that the district attorney may ask about it."

We think this was a proper disposition of the matter. Morello's counsel had opened the door.

Third. Sylvester, one of the defendants, was asked on cross-examination:

"Q. Where were you on the 15th of December, 1909? A. December 15, 1909, I was arrested. Mr. Towns: I move to strike out. The Court: Denied. (Exception.) * * * Q. Were you arrested on the 15th day of December, 1909, for burglary in the second degree? Mr. Towns: Objection. The Court: Sustained. Mr. Towns: I move to withdraw a juror. The Court: Denied. (Exception.)"

The objection was sustained, and the question was not answered. We think the court was right in refusing to withdraw a juror.

Fourth. Oddo, a witness for defendants, called to account for

Lupo's movements, testified on direct examination that Lupo had business trouble, and did not want to meet his creditors. On cross-examination he was asked:

"Q. Did he ever tell you that Lieut. Petrosini of the New York police force went over to the dock at Hoboken and got $30,000 worth of his goods that were being shipped to Messina? (Objection. Overruled. Exception.) Q. Did he ever tell you that? A. No, sir."

The question can be justified as relating to a subject brought out upon the direct examination, and the answer was calculated to make it harmless.

Fifth. Tali, a witness for the defendants, called to prove Morello's prolonged illness, was asked on cross-examination:

"Q. Do you know anything about Mr. Morello while he was abroad in Italy? A. No. Q. Do you know anything about his being convicted in Italy? A. No, sir. Q. Do you know anything about that? Mr. Towns: Objected to. The Court: Overruled. (Exception.)"

It will be noticed that this question was not answered, and it would not have been error to permit it to be answered inasmuch as the same question had been answered without objection immediately before.

"Q. Do you know anything about Mr. Morello while he was abroad in Italy? Mr. Towns: I take an exception to the district attorney's question as improper, incompetent, and immaterial, and framed for the purpose of having the jury in this case consider things that are not in the case, and it is not competent or pertinent here, or relevant, what Mr. Morello may have done in Italy. The Court: The district attorney has asked the question, and the jury will draw no inference because he asked such a question."

The question was never answered.

Sixth. During a heated colloquy between all concerned, the district attorney spoke of the defendants' counsel as being backed by a crowd of thugs, which remark the court ordered to be stricken out and so corrected the obvious impropriety.

Seventh. Burke, a government witness, testified that Capt. Flynn of the Secret Service, found a revolver on Cecala the day he was arrested:

"Mr. Towns: I admit the revolver was found on the defendant. Mr. Smith: Then I offer it in evidence. Mr. Towns: I object to it. I think this revolver was found on Mr. Cecala, but I object to it as being incompetent and irrelevant testimony. The Court: It may stand. This revolver was found on him when he was arrested. Mr. Towns: Exception. Revolver marked 'Exhibit 78.'"

Callaghan, a government witness, was examined as follows as to Morello:

"Q. Was there anything on that bed when he got up? A. Right under his back he was lying on a pillow, and right under his back was a .44 caliber revolver fully loaded. Mr. Towns: I move to strike out this testimony that right under his back was a .44 caliber revolver, as being incompetent, irrelevant, and prejudicial to Morello's case; in that he brings an extraneous and unrelated matter into the case. It is not claimed that he resisted the officers in any way, and I respectfully submit, if your honor please, that the introduction— Mr. Smith: It was all introduced some time ago without objection. Officer Henry testified to it without any

objection on the part of Mr. Towns. The Court: Motion denied. Mr. Towns: Exception."

Rubano, a government witness, testified that when he started to search Lupo's room, Lupo protested, saying, "What do you want?" Witness saw him reach his hand into the drawer, and witness opened the drawer and found a revolver, which he turned over to Chief Flynn. It was a Colt automatic, caliber .25.

"Received in evidence against Lupo—Exhibit 100. Revolver offered in evidence, objected to by Mr. Towns as incompetent, irrelevant and immaterial—was not found on Lupo, but found in his house. Overruled. (Exception.) Let it stand for the present against Lupo, but not against the others."

Flynn, a government witness, testified that he found a .32 caliber revolver on Cecala.

"Mr. Towns: Move to strike out the testimony with regard to his revolver. Overruled. (Exception.)"

It was of course no proof that these persons in connection with whom revolvers were found had committed the crime of counterfeiting. At the same time the fact was a part of the history of what took place, and we do not think that any one of the defendants was injured by the proof of it, or by the offer of the revolvers in evidence.

Eighth. Comito, a government witness, was asked on direct:

"Q. Did Cecala say anything to you about Morello when you left Morello's house? Mr. Towns: Objected to. I would like to know what year. Q. 1909? A. He told me this gentleman here is Giuseppe Morello and is the same man who has been implicated in the 'Barrel Murder.' Mr. Towns: I move to strike out as irrelevant, incompetent, and ask that it be stricken out. Motion denied. Mr. Towns: I move to withdraw a juror upon that statement of the district attorney. Motion denied. Mr. Byrne: I ask your honor to grant me an exception to the refusal of the court to withdraw a juror. The Court: Yes. Mr. Byrne: I ask your honor to grant my exception to a remark made in the course of this trial by the Assistant United States Attorney conducting it in which he said: 'It is a well known fact that he was'—meaning that Morello was arrested in connection with the 'Barrel Murder.' The Court: He will strike that out. The jury will disregard any reference to the barrel murder. Mr. Barra: An exception on behalf of Calicchio to the remarks of the district attorney. The Court: The jury will disregard the question entirely."

The question was improper, should not have been asked, and should have been stricken out. The arrest of Morello for the murder proved nothing. Still we think the court corrected the error by stating that the jury should disregard any reference to the barrel murder.

Ninth. Comito, a government witness, was asked on cross-examination:

"Q. Can you fix positively within three or four days, the time when you say Morello and Lupo and the rest of these defendants here assembled in the little house that you had occupied with Katrina, the first month of your living in Highlands, and when, as you say, Salvatore destroyed the bills? (Objected to as already gone over. Sustained. Exception.)"

He had already testified on cross-examination that this occurred on the last days of February or the first days of March, and it was within the discretion of the trial judge to say how often this same

matter could be gone into. The same witness on cross-examination was asked:

"Q. You have testified that you printed that two-dollar bill (showing). The Court: Never mind about that; what is your question? Mr. Byrne: That is the basis of the question, if your honor will bear with me I propose as quickly as possible to frame it. The Court: If you desire to ask any question, ask a question, and do not recite the testimony. If you cannot comply with that order, take your seat. Now go on. Mr. Byrne: I take an exception to your honor's remark. The Court: Now you may take your seat right now. Mr. Towns: Would your honor— The Court: Take your seat. Now, Mr. District Attorney, do you desire to ask this witness any further questions?"

While we think counsel should have been permitted to ask his question and to continue his cross-examination, there is nothing to show, and we cannot believe, any defendant was prejudiced by what occurred.

Tenth. Devoti, a government witness, testified on cross-examination that he had spoken to one Vassi whose house was subsequently searched and some of these counterfeit notes found there:

"Q. What did you say to Vassi and what did he say to you? Mr. Smith: Objection on the ground that it is incompetent, irrelevant, and immaterial. (Sustained. Exception.)"

If counsel had intended to rely upon such an exception as this, he should have stated some ground upon which the conversation with Vassi would be competent.

Eleventh. Henry, a government witness, was recalled for further cross-examination and this occurred:

"Q. Ever been in Illinois? (Objected to as incompetent, irrelevant, and immaterial.) The Court: I think this should have been gone over before. You cannot open up a general history of this witness now. Mr. Towns: As long as the witness is in court, I may recall him for cross-examination at any time. The Court: It is not a matter that would have escaped attention. If a man has cross-examined a witness and has inadvertently overlooked a question, the court will permit him to be recalled; but to open up wide and spend the time now is too late. (Overruled. Exception.) Q. Have you ever been in Joliet? Mr Smith: Objected to as incompetent, irrelevant and immaterial. (Same ruling. Exception.) A. I would rather answer that question."

There was nothing in the direct examination to justify this question. Nor was there apparently any effort to show its materiality. We think it was within the discretion of the trial judge to exclude it.

Twelfth. Paradies, a witness for the government, testified that he had received a counterfeit $5 bill in his store at Highlands in June, 1909, from an Italian, which he deposited in his bank, and which the cashier punched as counterfeit. This would of course have been irrelevant and immaterial but for the fact that the bill was subsequently identified by Special Agent Flynn as one of the counterfeits in question.

Thirteenth. Flynn, a government witness, testified that he had received from the other government agents some lithographic stones on which he had found the outline of the counterfeits. One of the stones was then submitted to the jury.

"Mr. Towns: Object to this proceeding. The Court: Mr. Reporter, take on the minutes that the jury is now permitted by the court to examine the inscription and marks upon the stone in evidence, said to have been found at Calicchio's, and said to be admitted by him to be his. The jury is now allowed to inspect those stones, and I give you an exception."

The grounds of objection are not stated, but probably were, first, that the stones had not been sufficiently identified as Calicchio's, and, second, that they had been altered; but it had been sufficiently proved by previous witnesses that these stones did come from Calicchio's room, and that the only alteration was the cleaning of them. The same witness was asked:

"Q. Tell us what attracted your attention to these particular counterfeits, or how did you first learn of their being passed? A. By complaints from banks and merchants. Mr. Towns: Objected to as irrelevant and incompetent. The Court: He may state that his attention was called to them by complaints. (Exception.) Many of them were sent to witness in response to letters and telephone calls. Mr. Towns: Move to strike out all the statement about some bills being sent to him. The Court: The $5 bills you are referring to? A. Both twos and fives. The Court: That are charged in the indictment were sent to him? Mr. Smith: Yes. Mr. Towns: Exception. These bills came from different localities covering a radius of 100 miles. Mr. Towns: Same objection. (Same ruling and exception.)"

We discover no error in these rulings. The same witness testified that he had bought 10 of these counterfeit $5 notes for $17 in marked bills, and that he found three of these marked bills on the defendant Cecala when arrested:

"Q. And on the 15th, when Cecala was arrested, these three marked bills were found on his person. Is that right? A. Yes, sir. Mr. Towns: Objected to as incompetent, irrelevant, and immaterial as against any one except Cecala, and as against Cecala objected to as incompetent, irrelevant, and immaterial and not properly identified. (Overruled. Exception.) * * * Witness gave out the money on the 13th and got the counterfeits on the 15th, and on the 15th he took this marked money which he had given to the purchaser from Cecala. Mr. Towns: I object to the three bills going in evidence. The seller is a myth, and two days have elapsed when in a roll of $221 on a man who is dealing in groceries, these three bills are alleged to have been found. The Court: Your motion is to strike out these bills that he purchased, and the three marked bills that he testified about, and the evidence regarding them on the ground that you have stated? Mr. Towns: Yes. (Denied. Exception.)"

We see no error in this.

Fourteenth. Lupo, one of the defendants, testified on direct that he had killed a man in Italy in self-defense, named Salvatore Morello. On cross-examination he was asked:

"Q. Did you ever know or learn what the action in the court of Italy was in regard to your murder of Salvatore Morello? The Court: I will not allow the word 'murder'; he says he shot him. Q. Now, did you ever hear or learn what the action of the court of Italy was in regard to your shooting a man? Mr. Towns: I object. (Overruled. Exception.) A. I don't know what they did. Q. Did you ever learn that you were convicted in Italy of a willful and deliberate murder? Mr. Towns: I move to strike out that question, and ask the court to instruct the jury to disregard it. (Motion denied. Exception.) A. I don't know it. Q. Did you ever know that proceedings were had in Italy on the 12th of March, 1899, in which

Salvatore Gonzezzo testified, M. Strazzeri, G. Angeri and V. Soudari, and after the testimony of those witnesses was given, you were convicted of a 'deliberate and willful murder? Mr. Towns: That I object to as being highly improper and a question based upon facts not in evidence and as a characteristic by the district attorney of something that never occurred. The Court: I don't know whether it did or did not; he may ask whether he ever learned that fact. Mr. Towns: I object to it on behalf of all the defendants. (Overruled. Exception.)"

The inquiry as to what occurred in Italy was germane to the examination in chief, though irrelevant. Moreover, the court, in his charge, corrected any prejudice on the part of the jury, saying as to Lupo:

"You must not consider the action of the authorities in Italy. Dismiss that from your minds, so far as there has been a reference to it, if you heard any reference to it."

Fifteenth. Rosalia Cina, the wife of the defendant Cina, and Giovannina Giglio, the wife of the defendant Giglio, were examined on behalf of all the defendants except their husbands, but we discover no merit in the exceptions taken to their testimony.

The record would have been much better without many of the foregoing matters, but we are satisfied that no harmful error was committed which would justify a new trial. The judgment is affirmed.